# Richmond.

## JOE GOODMAN v. COMMONWEALTH.

January 16, 1930.

Absent, Chichester and Epes, JJ.

944

The opinion states the case.

*Tom E. Gilman* and *Jas. G. Martin*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

Joe Goodman has been by a jury found guilty of involuntary manslaughter, been sentenced to ninety days confinement in jail and fined $100.00.

There is no substantial conflict in the testimony and the facts are thus fairly summarized in the petition:

The accused, Joe Goodman, was driving his automobile, on a rainy night, eastwardly on County street, in the outskirts of Portsmouth, on June 25, 1928, having on the right side back seat his friend, Burnie, and there were three other persons in the car.

There was a large farm truck at rest, parked, headed in the same direction towards Portsmouth, on the right hand or southern side of the highway, all four wheels of which were on the concrete roadway. An automobile approached from the opposite direction, going west. The defendant, driving, slowly drew up behind the truck to let this automobile pass, and then proceeded at a moderate speed to attempt to pass the truck, when another automobile, bound west, driven by a man named King, approached, and this automobile collided with that of the accused in a side-swipe. Then the automobile driven by the accused skidded, was knocked against the truck, and a rod protruding from the left side of the truck struck Burnie on the head and

killed him. The accused gave all the aid he could to Burnie, took him to a hospital and immediately reported the occurrence to the police. There was no excessive speed, drunkenness, or other circumstance of aggravation charged or proved against the accused.

One of the errors assigned is that the verdict is contrary to the law and unsupported by the evidence. The question, then, is whether, under the facts shown, the accused can be adjudged guilty of involuntary manslaughter.

The general rule, well supported by the authorities, old and new, is thus stated in 29 Corpus Juris, at page 1154:

"*In General.* As has been noted, involuntary manslaughter may consist in the doing of a lawful act in an unlawful manner, and, hence, where an unintentional homicide is occasioned by the gross or culpable negligence of defendant, although in the commission of an act lawful in itself, it is manslaughter, and under some statutes involuntary manslaughter is defined as including a homicide in the commission of a lawful act without due caution or circumspection. While the kind of negligence required to impose criminal liability has been described in different terms, it is uniformly held that it must be shown that a homicide was not improbable under the facts as they existed which should reasonably have influenced the conduct of the accused. The negligence must not be so gross as to raise the presumption of malice, it must have been the negligence of the defendant personally, and it must be the proximate cause of the homicide."

Homicides resulting from driving of automobiles upon highways have been considered in many cases, but we deem it necessary to refer to very few comparatively.

The only Virginia case, so far as we know, in which there was such a homicide, is that of *Brooks* v. *Commonwealth*, 145 Va. 853, 134 S. E. 726. In that case the accused was convicted of involuntary manslaughter. His automobile, after collision with another, skidded across the road and there killed a pedestrian. The indictment charged that the defendant drove his car at a speed in excess of that allowed by law, and that it was operated in a grossly careless and negligent way. This court reversed the judgment upon the ground that the verdict was unsupported by the evidence.

A similar question, as affecting a locomotive engineman, was decided in the case of *State* v. *Tankersley*, 172 N. C. 955, 90 S. E. 781, 782, L. R. A. 1917C, 533. There it was held that the engineman was not guilty of manslaughter in colliding with a standing train and killing passengers thereon, merely because he failed to obey a cautionary signal, if there was nothing about the signal to indicate that there was danger of collision or that life was imperiled. Among other things the court said: "The decisions of the courts have described in different terms the kind of negligence required to constitute crime. In some of them it is said to be negligence that is 'culpable and gross.' In others, that it must be such as to show a reckless disregard of the safety of others, etc.; but all of the authorities are agreed that, in order to hold one a criminal, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue, and that, in order to a conviction of involuntary manslaughter, attributable to a negligent omission of duty, when engaged in a lawful act, it must be shown that a homicide was not improbable under all the facts existent at the time, and which should reasonably have an influence and effect on the conduct of the person

charged. As apposite to the facts of this record, the position is very well stated in 1 McClain's Criminal Law, section 350, as follows: 'Negligence which will render unintentional homicide criminal is such carelessness or recklessness as is incompatible with a proper regard for human life. An act of omission as well as of commission may be so criminal as to render death resulting therefrom manslaughter. But the omission must be one likely to cause death.' "

It is said in the note to the case of *North Carolina* v. *Reid Sudderth*, 184 N. C. 753, 114 S. E. 828, 27 A. L. R. 1182, referring to manslaughter or assault in connection with the driving of automobiles: "The late cases are unanimously to the effect that where one drives his automobile in such a manner as to violate the laws in respect thereto, and while so doing strikes another and causes his death, he is guilty of manslaughter. *Anderson* v. *State* (1922), 18 Ala. App. 429, 93 So. 68; *People* v. *Seiler* (1922), 57 Cal. App. 195, 207 Pac. 396; *Hobbs* v. *State* (1922), 83 Fla. 480, 91 So. 555; *Commonwealth* v. *Peach* (1921), 239 Mass. 575, 132 N. E. 351; *Commonwealth* v. *Guillemette* (1923), 243 Mass. 346, 137 N. E. 700; *State* v. *Jessup* (1922), 183 N. C. 771, 111 S. E. 523 * * * *Shorter* v. *State* (1923), 147 Tenn. 355, 247 S. W. 985."

The opinion in *State* v. *McComb*, 33 Wyo. 346, 239 Pac. 526, 528, 41 A. L. R. 721, reversing a conviction of involuntary manslaughter for killing a young girl while driving an automobile on a highway, shows that like many general statements that last quoted may be misunderstood. "There are, it is true, cases holding that an unlawful killing as the result of want of ordinary care may constitute manslaughter, upon the theory that unlawful killing of another without malice, involuntarily, but in the commission of an unlawful act (4

Bl. Com. 191), may be manslaughter, and that want of ordinary care is an unlawful act. *Clemens* v. *State*, 176 Wis. 289, 185 N. W. 209, 21 A. L. R. 1490, and cases there cited. But that rule was criticized in the case just mentioned, and when our statute provided that the negligence must be culpable or criminal—terms evidently used synonymously—it would seem that it meant to provide specifically that the unlawful act relied on in manslaughter, must, if it consists of negligence, be more than ordinary negligence, and must be culpable or criminal in its nature. And that seems to be the general rule." Note, 90 Am. St. Rep. 571, *et seq.*

In *People* v. *Benson*, 321 Ill. 605, 152 N. E. 514, 46 A. L. R. 1060, note, a conviction of "an assault with a deadly weapon" was affirmed in a case in which it appeared that the accused, while attempting to pass an automobile on a highway which he was overtaking was guilty of conduct so reckless and wanton as to show an utter disregard of the safety of the persons in the overtaken car.

A pertinent case is *Copeland* v. *State* (1926), 154 Tenn. 7, 285 S. W. 565, 566, 49 A. L. R. 605. There it was held that the accused was not guilty of involuntary manslaughter because he killed a boy in attempting to drive an automobile into the gap between two wagons which had just passed each other, going in opposite directions, because it reasonably appeared to him that he could safely do so, and the boy, concealed behind the wagon which the accused was meeting, unexpectedly ran into the path of his car. These expressions from the opinion seem to be quite appropriate in this case: "In a charge otherwise accurate the trial judge failed to instruct the jury that, to convict for homicide caused from a lawful act committed in an unlawful manner, as in *Lee* v. *State, supra* [1 Cold. 62], it must

appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpbably negligent act. * * * If it reasonably appeared to Copeland that the wagons were in a position to enable him safely to pass the log wagon (facing him) on the right °and the Bingham wagon (going from him) on his left, by driving between their rear after they passed each other, and the boy concealed behind the log wagon unexpectedly ran into the road immediately ahead of the car and was killed, the killing would not be involuntary manslaughter. 13 R. C. L. 858. Allowance must always be made for misadventure and accident, as distinguished from culpable negligence. * * * To sustain a conviction for involuntary manslaughter, the death must have been the natural and probable consequence of the unlawful act, and not the result of an independent intervening cause, in which the accused did not participate, and which he could not forsee. 29 C. J. 1150."

On the other hand, *Story* v. *United States*, 57 App. D. C. 3, 16 Fed. (2d) 342, 53 A. L. R. 246, note page 254, is a case of killing by automobile in which the conviction was upheld. There the accused was adjudged guilty of involuntary manslaughter because it appeared that he was sitting in the front seat of his automobile and permitting an intoxicated driver to operate it in a reckless and negligent manner, so that a pedestrian, also intoxicated, was run over and killed by his car. It also appeared that the drunkenness and danger of the man who was killed while attempting to walk along the road, were apparent to the accused.

In many of the cases specific statutes defining the killing of persons on highways by automobiles as manslaughter are cited.

■ ■ The Attorney-General, for the Common-

wealth, seems to realize that in order to sustain the conviction in this case, the prosecution should be able to point out the statute which the accused was violating, and to show that such violation was the proximate cause of the homicide. He quotes this language from paragraph "a," section 13, of chapter 474 of the Acts of 1926, regulating the operation of vehicles upon public highways: "The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, and such overtaking vehicle shall give way to an oncoming vehicle."

We cannot agree that in this case the facts show any violation of that statute, or that it has any application to the conceded facts here. Manifestly that statute refers to moving vehicles-specifically, to two vehicles proceeding in the same direction and to the necessity for the driver of the one who undertakes to pass the other to exercise the requisite precaution to avoid collision between the two vehicles which are moving in the same direction as well as with a third vehicle which may be approaching from the opposite direction.

The truck which the accused was attempting to pass here was not proceeding in the same direction, but was at rest. The danger of passing a moving vehicle under such circumstances and the necessity of realizing the fact that the three vehicles are in danger of collision is far greater than the danger which exists when attempting to pass a vehicle at rest. This needs no demonstration. The statute clearly applies when the rear vehicle of the two proceeding in the same direction attempts to pass the other, but it cannot be applied to

the conditions here shown, because the vehicle being passed was standing still and parked. Of course, whether the vehicle to be passed is moving or at rest, it is the clear duty of the driver of the vehicle who attempts to pass it to exercise proper care to observe and avoid the danger of a collision with any oncoming vehicle.

When men, while drunk or sober, drive automobiles along highways and through crowded streets recklessly, the killing of human beings is a natural and probable result to be anticipated. When a homicide follows as a consequence of such conduct, a criminal intent is imputed to the offender and he may be punished for his crime. The precise grade of such a homicide, whether murder or manslaughter, depends upon the facts of the particular case. One, however, who accidentally kills another, even though he may be chargeable with some actionable negligence, is not guilty of a crime, unless his negligence is so gross and culpable as to indicate a callous disregard of human life and of the probable consequences of his act. The crime is imputed because of the recklessness, and where there is no recklessness there is no crime.

Applying the rules to which we have referred, it seems to us manifest that the accused is not shown to have been guilty of culpable or criminal negligence. He could not possibly have anticipated that the farm truck parked on the side of the roadway was the source of such great danger to any of the occupants of the automobile which he was about to drive past it, and the lurking danger (the protruding rod) was as great a menace to him and to the other three passengers in his automobile as it was to Burnie. Burnie's death was the result of misadventure of an independent and inter-

vening cause, and was not the natural and probable result of any reckless or culpably negligent act on the part of the accused.

This being our view of the case, it is unnecessary to discuss the other error which is assigned.

The judgment will be reversed and the case remanded to the trial court with directions to discharge the accused from further prosecution under this indictment.

*Reversed.*