## Norfolk

## ALBERT JOSEPH KEECH, JR.

### v.

## COMMONWEALTH OF VIRGINIA

No. 1592-87-1

Decided December 12, 1989

**Counsel**

William R. Savage (Glasscock, Gardy & Savage, on brief), for appellant.

Birdie H. Jamison, Assistant Attorney General, (Mary Sue Terry, Attorney General, on brief), for appellee.

**Opinion**

**KOONTZ, C.J.**—Albert Joseph Keech, Jr. was convicted in a jury trial in the Circuit Court of the City of Suffolk of three counts of

involuntary manslaughter. On appeal, he challenges the sufficiency of the evidence to sustain the convictions. Keech was originally indicted for three counts of second degree murder. At the conclusion of the Commonwealth's evidence the trial court ruled that Keech's conduct was not willful or malicious, sustained his motion to strike the charges of second degree murder, and reduced the charges to involuntary manslaughter on each count. The jury found Keech guilty of three counts of involuntary manslaughter and sentenced him to two years on each charge.

The pertinent facts leading to the charges against Keech are not in dispute. On Sunday, July 6, 1986, at approximately 7:30 p.m., Keech was returning to his home in Boykins, Virginia, from work in Chesapeake, Virginia. He stopped for gas at a convenience store beside Route 58 in Chesapeake. Keech testified that he had never before stopped at this store.

The section of Route 58 on which Keech traveled is a six-lane highway with a wooded median strip approximately seventy feet wide separating the eastbound and westbound lanes of traffic. Since Keech was traveling west on the trip home, he had to turn around at a crossover point in the median and travel a short distance (about 500 feet) eastward in the eastbound lane of Route 58 to reach the convenience store.

When he exited the convenience store lot, Keech turned left (west) back onto Route 58 and began traveling westward on the eastbound branch of the highway. He proceeded for approximately eight miles in the wrong direction, traveling in the far left lane (which would have been his right-hand lane if he were going in the proper direction). Various witnesses estimated his rate of speed at fifty or fifty-five m.p.h., over sixty m.p.h., and at least eighty m.p.h.[1]

The westbound branch of Route 58 was not visible through the dense foliage in the median at the point where Keech left the convenience store. However, westbound traffic was visible to Keech at various other points as he continued westward. Drivers of other vehicles traveling both east and west on Route 58 attempted to get

---

[1] Keech was also charged with reckless driving. Upon motion of the Commonwealth this charge was dismissed when the trial court reduced the other charges to involuntary manslaughter.

his attention and warn him by blowing their horns and flashing their headlights at him. At several times, oncoming traffic had to move out of the left lane to avoid a head-on collision.

Keech drove against traffic for approximately five to seven minutes. Although there were numerous reversed traffic signs and several "wrong way" and "one-way" signs along the route, Keech apparently did not see them or if he did see them, he did not react to them. When other motorists waved at him to try to warn him that he was going the wrong way, Keech merely waved back.

Keech's car struck the victims' vehicle head-on, without slowing down. At the time of the accident, visibility was good and the pavement dry. There was no evidence that Keech's faculties were impaired by drugs or alcohol. His wife testified that he was both physically and emotionally exhausted due to his rigorous work schedule prior to the accident. There was no evidence that he intended to harm himself or other motorists. Keech himself was unable to recall actually leaving work and driving home on the day of the accident. His physician testified that, in his opinion, Keech's memory loss was due to traumatic amnesia.

■ In Virginia, involuntary manslaughter is classified as a class five felony, but is not otherwise statutorily defined. *See* Code § 18.2-36. Involuntary manslaughter in the operation of a motor vehicle is defined as an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *King v. Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977).

Based on the facts established at trial and this definition of vehicular involuntary manslaughter, Keech challenges the sufficiency of the evidence to support his convictions. Specifically, he asserts that the evidence fails to establish that he was consciously aware he was operating his vehicle in the wrong lane of the divided highway. Consequently, he argues that he cannot be guilty of "a reckless disregard of human life" which, he asserts, connotes an intentional act.

The issue raised by Keech is a narrow one, but one which has not expressly been addressed by the appellate courts of this Commonwealth. Keech concedes that he was negligent in turning in the wrong direction onto the highway from the convenience store

lot. In addition, he does not contest that if he had been aware of this error and that he was consequently driving against the flow of traffic on this divided highway, he would have been aware of the obvious risk to human life he was creating. These concessions are self-evident. In short, Keech argues that to be criminally liable for his negligent conduct the Commonwealth had to prove that he actually was aware that he was driving in the wrong lane of traffic and not merely that he should have been aware of this tragic error.

Before addressing the issue which Keech raises we first must determine whether the evidence supports the hypothesis that he was not consciously aware that he was driving in the wrong lane of this particular highway. We believe the evidence supports that hypothesis. There was no evidence that Keech was under the influence of alcohol or drugs or that he intended to harm himself or others. The crossover point in the median was not immediately adjacent to the convenience store where Keech stopped for gas, and at that point a wooded median strip approximately seventy feet wide separated the eastbound and westbound lanes of the highway. On these facts the jury could reasonably have concluded that Keech inadvertently turned left onto the highway from the convenience store lot and began traveling westward on the eastbound branch of the highway. In addition, the fact that Keech traveled for approximately eight miles in the lane which would have been the proper lane if he had not been on a divided highway, but which in fact created an almost inevitable risk to his own life, supports the hypothesis that he was not consciously aware of his error. Moreover, the trial court expressly found that Keech's conduct was not willful or malicious. Because the evidence supports Keech's contention that he was not consciously aware of the risk created by his conduct, we must determine whether such circumstances relieve him of criminal responsibility under the Virginia definition of vehicular involuntary manslaughter articulated in *King* or whether an objective test of awareness of the risk is applicable to such cases.

█ The premise upon which the negligent operation of a motor vehicle can constitute a criminal act in this Commonwealth was early articulated in *Goodman v. Commonwealth*, 153 Va. 943, 151 S.E. 168 (1930). In *Goodman*, our Supreme Court noted that when motor vehicles are driven recklessly the killing of human be-

ings is a natural and probable result to be anticipated, and when a homicide follows as a consequence of such conduct a criminal intent is imputed to the offender and he may be punished for his crime. The Court further noted that the grade of the homicide, murder or manslaughter, would depend upon the facts of a particular case. "One, however, who accidentally kills another, even though he may be chargeable with some actionable negligence, is not guilty of a crime, unless his negligence is so gross and culpable as to indicate a callous disregard of human life and of the probable consequences of his act. The crime is imputed because of the recklessness, and where there is no recklessness there is no crime." *Id.* at 952, 151 S.E. at 171.

In *Goodman*, the Court reversed a manslaughter conviction, finding that the accused driver of a car could not have "anticipated" that when he passed a parked truck and collided with an oncoming car and ultimately struck the same truck, that a protruding rod in the truck would strike and kill a passenger in his car. In reaching this determination the Court did not expressly state whether the driver was relieved of criminal responsibility because he was not, in fact, aware of the risk or whether he was relieved of criminal responsibility because a reasonable person would not have been aware of the particular risk. *Goodman*, however, seems to be premised upon an objective test; that is, the driver was neither actually aware of the risk nor, under these particular facts, could he reasonably have been expected to have been aware of the risk presented by the protruding rod in the parked truck.

Subsequent to the *Goodman* decision, the appellate courts of this Commonwealth have affirmed and reversed convictions of vehicular involuntary manslaughter based upon the particular facts in such cases. Most, if not all, of these cases are referred to in our decision in *Tubman v. Commonwealth*, 3 Va. App. 267, 348 S.E.2d 871 (1986), and need not be listed again here. The consistent thread that runs through these cases is that a higher degree of negligence in the operation of a motor vehicle is required to establish criminal liability for involuntary manslaughter than to establish liability in a civil action for ordinary or even gross negligence. This higher degree of negligence has come to be known as "criminal negligence."

In defining criminal negligence, our Supreme Court, in *Bell v. Commonwealth*, 170 Va. 597, 195 S.E. 675 (1938), stated: "[criminal negligence] must be more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life." *Id.* at 611, 195 S.E. at 681. Criminal negligence has also been defined as conduct "so gross, wanton, and culpable as to show a reckless disregard of human life," *King v. Commonwealth*, 217 Va. at 607, 231 S.E.2d at 316; and conduct "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury," *Mayo v. Commonwealth*, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977); and conduct "so gross and culpable as to indicate a callous disregard of human life." *Darnell v. Commonwealth*, 6 Va. App. 485, 492, 370 S.E.2d 717, 720 (1988). These various definitions make clear that the distinction between the negligence which will support a conviction of involuntary manslaughter involving the operation of a motor vehicle and the negligence that will merely support a civil action is one of degree.[2]

In determining the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor. Obviously, when the driver proceeds in the face of a known risk, the degree of the negligence is increased, and may turn that which would have been ordinary negligence into gross, willful or wanton negligence. Since, in this case, the evidence does not establish that Keech proceeded in the face of a known risk, we must determine whether it is sufficient that a person of ordinary prudence would have known the risk.

In this regard, *Bell* is helpful in clarifying the appropriate application of the *King* definition of vehicular involuntary manslaughter, particularly the phrase "negligence so gross, wanton, and culpable as to show a reckless disregard for human life." 217 Va. at 607, 231 S.E.2d at 316. In *Bell*, the Court stated:

It is most difficult to define and to determine "gross and culpable negligence" in brief terms applicable to every situation

---

[2] Thus, in *Mayo* the Court stated: "What distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways." *Id.* at 648, 238 S.E.2d at 833.

. . . . [Gross negligence] is such negligence as may be often best evidenced by a series of acts of commission or omission indicating a state of mind or lack of thought of the offender. The commissions or omissions may be dependent, independent, interdependent, or cumulative, provided there is some causal relation to the state of the mind, or to the acts of the offender with the offense charged. The word "culpable," in popular use and acceptation, means deserving of blame or censure. "Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and *the offender knows, or is charged with the knowledge of, the probable results of his acts.*

*Id.* at 611-12, 195 S.E. at 681 (emphasis added).

When the *King* definition of involuntary manslaughter involving the operation of a motor vehicle is considered in the context of this language from *Bell*, it is apparent that the Supreme Court has framed the determination of that degree of negligence which will support a vehicular involuntary manslaughter conviction in terms of a great risk of injury coupled with an objective awareness of that risk on the part of the offender.

In *Bell*, the Court upheld an involuntary manslaughter conviction where the driver, operating his car without headlights, struck and killed one of two pedestrians on a narrow dark road. The Court specifically rejected Bell's claim that the evidence did not show he knew his headlights were not burning. Implicitly, the Court found that either Bell was consciously aware or he should have been aware that his lights were not burning. Similarly, in *King* a majority of the Court reversed an involuntary manslaughter conviction, finding that the evidence was sufficient to show only that the accused inadvertently failed to turn on her headlights rather than her parking lights just prior to a collision with another vehicle which resulted in the death of two passengers in the latter vehicle. In *King*, the Court implicitly found that, under the particular facts of that case, the accused driver was neither consciously aware nor should she have been aware that her head-

lights were not burning. In our view, these cases are entirely consistent and support the view that a conviction of involuntary manslaughter involving the operation of a motor vehicle can be supported when the conduct of the driver constitutes a great departure from that of a reasonable person (gross, wanton or willful conduct) which creates a great risk of injury to others and where by the application of an objective standard the accused should have realized the risk created by his conduct.

In support of his assertion that actual awareness of the risk is required for a finding of criminal negligence in the operation of a motor vehicle, Keech relies heavily on certain quotations in our decision in *Tubman*, and on the recent decision in *Booth v. Robertson*, 236 Va. 269, 374 S.E.2d 1 (1988). In *Tubman*, the following quotation appears: "Willful and wanton negligence is acting *consciously* in disregard of another person's rights or acting with reckless indifference to the consequences, *with the defendant aware*, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* at 271, 348 S.E.2d at 873 (emphasis added)(quoting *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984)). Admittedly, this quotation taken out of context appears to imply that subjective or actual awareness is required under the *King* definition of "negligence so gross, wanton, and culpable to show a reckless disregard of human life." *Griffin*, which is quoted in *Tubman*, was a civil case in which the sole issue was whether the plaintiff (victim) was guilty of contributory negligence as a matter of law. The Court in *Griffin* found that the victim was guilty of contributory negligence and that the jury upon remand would have to determine whether the defendant was guilty of willful and wanton negligence, in which case the victim's negligence would not be a bar. In *Griffin*, the defendant consciously discharged a deadly weapon in close proximity to a number of people in a relatively small room, apparently out of fear of what he thought was a snake thrown at or near him by the victim who died as a result of the discharge of the weapon. Significantly, in addition to the above quotation, the Court in *Griffin* also stated: "Willful and wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former *an actual or constructive consciousness of the danger involved is an essential ingredient* of the act or omission . . . ." 227 Va. at 321-22, 315 S.E.2d at 213 (citation omitted)(emphasis added). Thus, in our

view the Court in *Griffin* was applying an objective test of awareness.

In *Booth*, also a civil case, the defendant, while under the influence of alcohol, drove down the wrong side of an interstate highway and collided with the vehicle driven by the plaintiff. The issue was whether punitive damages could be awarded under the facts in that case. Pertinent to the issue presented by the present appeal, the Court rejected the defendant's contention that, without a showing that he knew he was traveling in the wrong direction or that he was deliberately bent on destruction and did not care, he could not be found to have acted in a willful and wanton way which evinced a conscious disregard of the rights of others. Keech relies primarily upon the dissenting opinion in *Booth*, which disagreed with the majority in remanding the issue of punitive damages to the trial court. The dissent concluded that intoxication alone does not establish malice or a conscious disregard of the rights of others for which punitive damages are appropriate. *Booth* does not support Keech's contention in the present case. Vehicular manslaughter does not require a showing of malice. The presence of malice where death results would raise the offense from manslaughter to murder.

Finally, we review the evidence, upon familiar principles, in the light most favorable to the Commonwealth and accord to that evidence all reasonable inferences fairly deducible therefrom. In doing so we apply the objective awareness test to the issue presented. Keech concedes that he was negligent in turning onto this divided highway and proceeding in the wrong lane against oncoming traffic. He also concedes that such conduct created a great risk of injury to others which was not improbable and clearly could have been anticipated. As we have previously indicated, these concessions are not debatable and are supported by the evidence. With regard to Keech's contention that he was not consciously aware of the risk he was creating, the same facts which support that contention ironically also support the conclusion that he should have been aware. Even assuming that he did not knowingly make the initial wrong turn onto the highway, thereafter he traveled the next seven or eight miles, with westbound traffic visible to him at various points, with other motorists traveling both east and west warning him by blowing horns and flashing lights, with reversed traffic signs and several "wrong way" and "one way" signs visible

to him. Under these circumstances, we conclude that he should have known that he was traveling in the wrong lane and, therefore, should have known of the risk his conduct created. We also conclude that his conduct of continuing to drive against oncoming traffic once armed with this knowledge which is chargeable to him, was a callous act of indifference to the safety of others and constituted conduct "so gross, wanton and culpable as to show a reckless disregard of human life." The degree of Keech's negligence, as determined by the great risk of injury together with the knowledge he had or should have had of that risk, was sufficient to support the convictions. Accordingly, the convictions of involuntary manslaughter are affirmed.

*Affirmed.*

Cole, J., and Hodges, J., concurred.*

---

\* Judge Hodges participated in the hearing and decision of this case prior to the effective date of his retirement on October 31, 1989.