COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


HOANG HUY NGUYEN

                                      MEMORANDUM OPINION* BY
v.         Record No. 0211-95-2        JUDGE MARVIN F. COLE
                                           APRIL 2, 1996
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF CAROLINE COUNTY
                       J. Peyton Farmer, Judge


              Michael HuYoung for appellant.

              H. Elizabeth Shaffer, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


     In a bench trial, the appellant, Hoang Huy Nguyen, was

convicted on three counts of vehicular involuntary manslaughter

in violation of Code § 18.2-36.  On appeal, Nguyen contends that

the evidence was insufficient to support the convictions.  We

disagree and affirm.

              [W]e review the evidence in the light
              most favorable to the Commonwealth, granting
              to it all reasonable inferences fairly
              deducible therefrom.  The judgment of a trial
              court sitting without a jury is entitled to
              the same weight as a jury verdict and will
              not be set aside unless it appears from the
              evidence that the judgment is plainly wrong
              or without evidence to support it.


Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497

(1990) (en banc) (citation omitted).

_____

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

On July 3, 1993, at about 3:30 p.m., a collision occurred on Interstate 95 in Caroline County involving a 1992 white Plymouth Laser driven by appellant and a 1993 Ford van operated by Steven Rivers. Three children, who were passengers in the van, died as a result of the crash. The accident occurred in the southbound lanes of I-95 which contain three traffic lanes divided by broken white lines. The maximum speed limit on I-95 at the time of the accident was sixty-five miles per hour. The evidence did not disclose any defects in the roadway or in either vehicle involved in the accident.

At trial, the first witness called by the Commonwealth was Khan Ho, who was a passenger in appellant's vehicle. After the accident, Ho advised the investigating state trooper that he was the driver of the 1992 white Laser. He gave the officer a statement that the accident was his fault. He testified that he initially told the officer he was the driver and took responsibility for the accident because he did not appreciate the seriousness of the accident and wanted to help appellant, who did not have a good driving record. Several days later, Nguyen admitted that he was the driver. All charges against Ho were dismissed and instituted against Nguyen.

When questioned about Nguyen's driving, Ho testified that his speed was "about seventy -- seventy something." When asked "Who was drinking?" he responded, "[a]t that time, I drank two

beers and Hoang [Nguyen] was drinking one." There were twelve beers in the car, and Ho testified that after the collision, he threw them out of the car window.

The 1993 Ford van, containing nine people, was driven by Steven Rivers. He testified on behalf of the Commonwealth and stated that he was proceeding southward on I-95 in the middle lane. He did not recall his speed. He stated that it was July 3 and "[t]raffic was very heavy." In describing his recollection of the accident, he said:

> There was another vehicle in the right lane that was ahead of me. We had been in that position for, I think, quite a while. I heard a loud noise. I thought that the axle or something had snapped on the vehicle and I couldn't control it anymore. And I lost control of the car.

Liza Olavarria, a witness for the Commonwealth, testified that at the same time and place, she was driving her car southward on I-95 in the left lane. Her speed was sixty-five to seventy miles per hour. She described her first observation of appellant's Laser as follows: "Well, he was traveling very fast. He 'whizzed' by me on my right." She testified that the appellant was in the middle lane and "going right by me" and was "changing lanes."

Ms. Olavarria testified that when appellant passed her in the middle lane, the 1993 Ford van was in front of her and also in the middle lane. She placed another car in the right lane behind the van. I-95 was, therefore, obstructed by a van in the

3

middle lane followed by the appellant, Ms. Olavarria in the left lane and another vehicle in the right lane.

Ms. Olavarria saw the Laser cut in front of the car in the right lane. She testified that after getting into the right lane, "he" made a movement to the left and struck the van. She described what she observed as follows: "He made it into the right lane and then, turned into the van and made the van go into other lanes and then, the van went like this [witness indicating] and then, toppled over the side."

Ms. Olavarria's sister, Amy, was sleeping in the Olavarria car. She heard the brake noise and awoke in time to see appellant's vehicle hit the van. She testified that she saw the van "flipping over" and glass and debris coming toward her.

Trooper C. L. Richardson of the Virginia State Police investigated the accident. He testified concerning the physical evidence found at the scene and took photographs. Appellant's vehicle left skidmarks measuring 184 feet beginning in the right lane and continuing into the middle lane, where it collided with the Ford van. Trooper Richardson testified that he could determine the point of impact from the physical evidence on the roadway. He placed the point of impact in the middle lane, close to the right travel lane.

Photographs introduced into evidence show appellant's skidmarks commencing in the right lane and continuing almost out of the lane to the right. They then swing gradually back into

4

the right lane.  They then proceed in the right lane to the point of impact in the middle lane.  Trooper Richardson testified that the point of impact on appellant's car was at the left rear tire.

After impact at the right rear of the van, the van rotated in the middle lane, crossed into the right lane onto the shoulder of the road, and down a fifty foot embankment.  This, the officer stated, was consistent with being struck on the right side.  According to the officer's measurements, the van traveled 255 feet from the point of impact prior to going over the road guardrail.  After crossing the guardrail, the van went another ninety-two feet before coming to rest at the bottom of the embankment.  The van was damaged to such an extent the officer could not determine from it the point of impact.

## II.

The position of appellant is that the evidence may prove him guilty of negligence, but it is insufficient to establish that he is guilty of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.

The Supreme Court has declared that involuntary manslaughter in the operation of a motor vehicle in the Commonwealth "should be predicated solely upon criminal negligence proximately causing death."  King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977).  It has defined involuntary manslaughter in the operation of a motor vehicle as "the accidental killing which, although unintended, is the proximate result of negligence so

5

gross, wanton, and culpable as to show a reckless disregard of human life."  Id.  See also Tubman v. Commonwealth, 3 Va. App. 267, 348 S.E.2d 871 (1986) (referencing most, if not all, Virginia cases on vehicular involuntary manslaughter).

In Keech v. Commonwealth, 9 Va. App. 272, 386 S.E.2d 813 (1989), this Court stated:

> In determining the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor.  Obviously, when the driver proceeds in the face of a known risk, the degree of the negligence is increased, and may turn that which would have been ordinary negligence into gross, willful or wanton negligence.

Id. at 278, 386 S.E.2d at 816.

In Keech, the Court further addressed the question whether to apply an objective or subjective standard when determining what is a "known risk."  This Court held that an objective standard would apply and the degree of negligence would be "determined by the great risk of injury together with the knowledge [appellant] had or should have had of that risk."  Id. at 282, 386 S.E.2d at 818.

When appellant undertook to pass the Rivers' van, the law imposed upon him certain duties.  He had the common law duties to keep a proper lookout to see what could reasonably be seen, and to keep his vehicle under proper control.  He had several statutory obligations.  Whenever any roadway has been divided

6

into clearly marked lanes for traffic, drivers shall drive their vehicles as nearly as is practical entirely within a single lane and shall not be moved from that lane until the driver has ascertained that such movement can be made safely. Code § 46.2-804(2). "Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving." Code § 46.2-852. "A person shall be guilty of reckless driving who drives a vehicle which is not under proper control . . . ." Code § 46.2-853. "A driver shall be guilty of reckless driving who exceeds a reasonable speed under the circumstances and traffic conditions existing at the time, regardless of any posted speed limit." Code § 46.2-861.

When we consider the evidence in the most favorable light to the Commonwealth, as we must, we have no doubt that the appellant violated all of these duties. The issue, however, is whether the cumulative effect of his conduct constitutes "negligence so gross, wanton, and culpable as to show a reckless disregard of human life."

In Keech, we said that one significant factor to be considered was appellant's conscious awareness of the risk of injury created by his conduct, using an objective standard. In this case, appellant knew, or should have known, that his conduct created a great risk reasonably calculated to produce injury. It

7

was daylight and all the other vehicles were directly in front of him. Olavarria was in the left lane, Rivers was in the center lane and another vehicle, whose identification is unknown, was in the right lane. Despite this situation, appellant chose to pass all of them at an illegal rate of speed in excess of the maximum allowed by law. He chose a time to pass when his movement could not be made in safety. He "whizzed" past Olavarria and then cut in front of the car in the right lane. The skidmarks and the testimony of the state trooper establish that when appellant reached the right lane, his speed prevented him from entering that lane in a normal manner, but he continued to the far side of the right lane. He did not run off onto the shoulder because he cut back toward the center of the roadway and continued unabated southward in the center lane until he entered the middle lane and struck the Rivers' van, causing it to rotate in the roadway and run down the embankment, causing the death of three children in the van. Appellant's car during this period obviously was out of control. All of this occurred at a time when traffic on the highway was heavy.

One witness, an occupant of appellant's vehicle, testified that appellant, at the time of the accident, was drinking a beer. The fact finder could conclude that appellant possessed the beer while driving and that this would divert his attention from the business of driving and lessen his ability to control the vehicle. An obvious risk is incurred by this conduct while

8

driving under the circumstances that existed here.

### III.

We conclude from the undisputed evidence that appellant knew all of the traffic conditions that existed at the time. All of the traffic involved in the accident was in clear view and directly in front of the appellant in broad daylight. He was driving in excess of seventy miles per hour on a roadway with heavy traffic. He had a drink in his possession. The vehicles ahead of him were driving sixty-five to seventy miles per hour.

Under these circumstances, appellant willfully chose to pass all of the traffic ahead of him. To do this he had to change lanes, itself a dangerous maneuver, one in which the law places upon him the duty to make such movement only when it can be made in reasonable safety. Appellant was driving in excess of seventy miles per hour, violating the maximum speed limit on the roadway, again a willful and deliberate act on his part. The trial court found that appellant's conduct constituted negligence "so gross, wanton, and culpable as to show a reckless disregard of human life" and convicted him on three counts of involuntary manslaughter.

We cannot say that its judgment was plainly wrong or without credible evidence to support it. The degree of appellant's negligence, as determined by the great risk of injury together with the knowledge he had or should have had of that risk, was sufficient to support the convictions beyond a reasonable doubt.

9

For the reasons stated, we affirm the convictions.

<u>Affirmed.</u>