UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, O'Brien and Malveaux
Argued at Salem, Virginia


ROBERT ALAN NOVOTNY

MEMORANDUM OPINION[*] BY
v.        Record No. 1489-16-3        JUDGE MARY GRACE O'BRIEN
OCTOBER 10, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Marcus H. Long, Jr., Judge

(Mark Q. Anderson, on brief), for appellant. Appellant submitting on brief.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General; Lauren C. Campbell, Assistant Attorney
General, on brief), for appellee.


Tried by a jury, Robert Alan Novotny ("appellant") was convicted of involuntary

manslaughter in violation of Code § 18.2-36.[1] Appellant contends that the court erred in denying

his motion to suppress statements he made to a law enforcement officer. He also asserts that

because the Commonwealth did not prove criminal negligence, the evidence was insufficient to find

him guilty of involuntary manslaughter. We disagree, and affirm appellant's conviction.

FACTS

On appeal, we consider the evidence in the light most favorable to the Commonwealth, the

prevailing party at trial. Johnson v. Commonwealth, 9 Va. App. 176, 178, 385 S.E.2d 223, 224

(1989). On the night of January 31, 2015, appellant was driving his pickup truck on Route 114 in

Montgomery County when he collided head-on with a Chevrolet Blazer. The driver of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted of other offenses that are not the subject of this appeal.

Chevrolet, Franklin Dale Branch ("the victim"), died at the scene from blunt force injuries to his head and chest.

At the location of the accident, Route 114 is an undivided highway with two lanes separated by a double yellow line. The speed limit is forty-five miles per hour, and the road is level and straight. The night of the accident, the weather was clear and the road was dry.

The victim's wife was in the front passenger seat and was looking down. Immediately prior to the accident, she looked up, saw a "big flash of light," and heard the sound of glass breaking. At trial, she testified that "it was over . . . almost instant[aneously]."

Adam Phillips, who was driving directly behind the victim, saw appellant's truck cross over the center line into the oncoming lane of traffic. Phillips immediately stopped his car because he "could just tell . . . there was going to be an impact." After appellant's truck collided with the victim's Chevrolet, the truck continued toward Phillip's car, "landed up on the hood and rolled back off."

Lieutenant Bobby Joe Smith, Jr. of the Montgomery County Sheriff's Department, responded to the scene. He noted that there were no pre-accident skid marks on the road. As Lt. Smith was extricating appellant from his vehicle, appellant stated that he "takes Subutex and had for the last seven years."[2]

Sergeant C.F. Pack of the sheriff's department arrived at the hospital following the accident and found appellant lying on a stretcher, with his head immobilized by a neck brace. Sgt. Pack did not handcuff appellant, but placed one hand on him and advised that he was under arrest. Sgt. Pack asked a nurse to draw a sample of appellant's blood for chemical analysis, and he released appellant on a summons for driving under the influence of drugs.

---

[2] Subutex and Suboxone, two FDA-approved drugs for treating opiate addiction, both contain the active ingredient buprenorphine. Suboxone also contains naloxone, which reduces the abuse potential.

Appellant remained at the hospital for treatment, and Sgt. Pack asked him what he remembered about the accident. Appellant told Sgt. Pack that he was traveling approximately "50, 55, 58" miles per hour at the time of the collision, but he could not recall anything else. He also told Sgt. Pack that he last took Suboxone the night before the accident, but took the prescription drug, Amitriptyline, an anti-depressant, on the morning of the accident. Sgt. Pack did not advise appellant of his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), before questioning him.

In March 2015, appellant was served with additional charges at the magistrate's office, including a charge for driving on a suspended operator's license. When the magistrate asked appellant if he had any questions about that charge, appellant responded: "I did it; was high when I did it."

Appellant moved to suppress the statements he made to Sgt. Pack at the hospital because Sgt. Pack failed to advise him of his Miranda rights before questioning him. The court denied appellant's motion, ruling that appellant was not in custody at the hospital because appellant's own "plight . . . put himself there."

At trial, the Commonwealth presented evidence that although no drugs or alcohol were found in appellant's blood sample, the Department of Forensic Science does not test for buprenorphine, an active ingredient in both Subutex and Suboxone. An expert witness testified that Amitriptyline can produce side effects similar to those of Subutex and Suboxone, such as "drowsiness, dizziness, [and] difficulty performing divided attention tasks."

Appellant testified that the collision occurred because the victim's car moved into his lane of traffic. He stated that he swerved to avoid hitting the vehicle but he "didn't even have time to hit the brakes." He denied taking any prescription medicine the day of the accident and testified that, when he made the admission to the magistrate, he was "loaded down on pain medicine" for his accident-related injuries.

ANALYSIS

A. Motion to Suppress the Statement

When reviewing a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Quantum Div. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991)). However, "we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (*en banc*). In conducting our review, we are not limited to the facts presented at the suppression motion; rather, this Court "consider[s] facts presented both at the suppression hearing and at trial." Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009).

Appellant contends that Sgt. Pack subjected him to a custodial interrogation without first advising him of his Miranda rights. "It is a well-recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds." Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987). Further, "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010)). Assuming without deciding that appellant was in custody, and Sgt. Pack's failure to advise appellant of his Miranda rights before questioning him was error, we proceed with a determination of whether the error was harmless.

"Constitutional error, like other types of error, remains subject to analysis under the doctrine of harmless error." Foltz v. Commonwealth, 284 Va. 467, 472, 732 S.E.2d 4, 7 (2012). Such error requires reversal unless we find that the error is harmless beyond a reasonable doubt. Grant v.

Commonwealth, 54 Va. App. 714, 724, 682 S.E.2d 84, 89 (2009). In making this determination, this Court must ask itself "whether the [fact finder] would have returned the same verdict absent the error." Washington v. Recuenco, 548 U.S. 212, 221 (2006). Several factors are relevant to the decision, including: "(1) the importance of the tainted evidence in the prosecutor's case, (2) whether that evidence was cumulative, (3) whether there is evidence that corroborates or contradicts the tainted evidence on material points, and (4) the strength of the prosecutor's case as a whole." Angel v. Commonwealth, 281 Va. 248, 264, 704 S.E.2d 386, 396 (2011).

The relevant statements for the harmless error analysis are appellant's admissions at the hospital that he took Amitriptyline on the morning of January 31 and that he was traveling approximately "50, 55, 58" miles per hour before the accident. Appellant's statement concerning Amitriptyline was merely cumulative of his other statements about his prescription drug use: he admitted at the scene of the accident that he was taking a prescription drug, and he also told the magistrate that "he was high" when he hit the victim's car. Further, in and of itself, appellant's speed did not demonstrate "negligence so gross, wanton, and culpable as to show a reckless disregard of human life." King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). Rather, the strength of the Commonwealth's case derived from appellant's action of driving while impaired in the oncoming lane of traffic. Even without appellant's statements to Sgt. Pack at the hospital, the evidence was sufficient to establish that the jury would have returned the same verdict. Accordingly, we hold that any error in admitting appellant's statements was harmless.

## B. Sufficiency of the Evidence

Appellant contends the evidence was insufficient for a rational fact finder to find him criminally negligent and therefore guilty of involuntary manslaughter. When determining the sufficiency of the evidence to support a conviction, "[w]e review lower court factfinding with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633

S.E.2d 229, 231 (2006). The only relevant inquiry on appeal is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McMillian v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009) (quoting Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008)). We "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).

Involuntary manslaughter is defined as an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." King, 217 Va. at 607, 231 S.E.2d at 316. "[A] higher degree of negligence in the operation of a motor vehicle is required to establish criminal liability for involuntary manslaughter than to establish liability in a civil action for ordinary or even gross negligence. This higher degree of negligence has come to be known as 'criminal negligence.'" Keech v. Commonwealth, 9 Va. App. 272, 277, 386 S.E.2d 813, 816 (1989). "Criminal negligence 'must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life.'" Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004) (quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681 (1938)).

"[O]rdinary negligence becomes 'criminal when accompanied by acts . . . showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury[,] . . . and *the offender knows, or is charged with the knowledge of, the probable result of his acts*.'" Stover v. Commonwealth, 31 Va. App. 225, 231, 522 S.E.2d 397, 400 (1999) (quoting Keech, 9 Va. App. at 279, 386 S.E.2d at 817). "Criminal negligence as the basis for involuntary manslaughter is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts." Craig

v. Commonwealth, 34 Va. App. 155, 165, 538 S.E.2d 355, 360 (2000) (quoting Conrad v. Commonwealth, 31 Va. App. 113, 121-22, 521 S.E.2d 321, 325-26 (1999) (*en banc*)).

Appellant asserts that the Commonwealth's evidence did not establish he was "aware . . . of the risk of injury created by his conduct [or that] he proceeded to drive in the face of [a] known risk." He contends that the Commonwealth did not prove criminal negligence because "there was no objective test demonstrating [he] was impaired." However, this Court has previously held that evidence showing a defendant "was aware that he was driving in an impaired state" was sufficient to support a conviction for involuntary manslaughter. Cheung v. Commonwealth, 63 Va. App. 1, 11, 753 S.E.2d 854, 859 (2014). In Cheung, the Court affirmed a finding of criminal negligence where the defendant, who had previously complained of fatigue, fell asleep while driving a bus that was involved in a fatal collision. Id. at 6, 753 S.E.2d at 856. See also Conrad, 31 Va. App. at 124, 521 S.E.2d at 327 (holding that evidence was sufficient to prove involuntary manslaughter when the defendant "dozed off" four or five times before swerving off the road and striking and killing a pedestrian).

Here, the evidence established appellant knew that he was driving while impaired. At the scene, appellant told Lt. Smith that he was taking a prescription drug, and he later told the magistrate "I did it; was high when I did it." At trial, a toxicology expert testified about the potential side effects of the prescription drugs appellant admitted to taking regularly, including drowsiness and delayed reaction times.

Appellant also contends that the evidence was insufficient because "the bad driving at issue was so brief in time." He argues that unlike Cheung and Conrad, there was no testimony about previous instances of erratic driving behavior before the collision. However, "the evidence need not go so far as to establish the offender had a prior 'near-miss' before the requisite knowledge may be imputed." Wyatt v. Commonwealth, 47 Va. App. 411, 419, 624 S.E.2d 118, 122 (2006).

Therefore, it was sufficient that the eyewitness observed appellant's vehicle suddenly cross the double solid line and travel into the lane of oncoming traffic. See Zirkle v. Commonwealth, 189 Va. 862, 869, 55 S.E.2d 24, 28 (1949) (affirming an involuntary manslaughter conviction where the evidence established that the driver, with an unobstructed view of approximately 1,000 feet, "zigzagged across the center of the highway" and was "entirely on the wrong side of the road").

Finally, appellant's testimony that the victim's car was in his lane of traffic is contradicted by other testimony and photographic evidence. As fact finder, the jury was "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Viewed in its entirety, the evidence was sufficient for any rational fact finder to conclude that by driving while impaired, appellant recklessly disregarded the rights of others and should have known his actions were likely to injure another person. Accordingly, we affirm appellant's conviction for involuntary manslaughter.

                                                                                            Affirmed.