COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Felton
Argued at Alexandria, Virginia


STEVEN MICHAEL WYATT
                                                        OPINION BY
v.        Record No. 2924-04-4                   JUDGE LARRY G. ELDER
                                                       JANUARY 10, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James H. Chamblin, Judge

Michael D. Sawyer (Moyes & Levay, P.L.L.C., on brief), for
appellant.

Stephen R. McCullough, Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


Steven Michael Wyatt (appellant) appeals from his jury trial conviction for aggravated

involuntary manslaughter under Code § 18.2-36.1(B).[1]  On appeal, he contends the evidence was

insufficient to support a finding that his conduct causing a death "was so gross, wanton and

culpable as to show a reckless disregard for human life," as required for a conviction for

violating Code § 18.2-36.1(B).  We hold the evidence was sufficient to support a finding that

appellant was criminally negligent, and we affirm the conviction.

I.

BACKGROUND

Shortly after 7:15 p.m. on November 23, 2001, after dark, Paulette Shaw was driving her

Ford Explorer eastbound on a straight, two-lane road with a speed limit of 55 miles per hour.

---

[1] Appellant also was convicted for felony hit-and-run and the misdemeanor of driving
under the influence while underage.  He noted an appeal of all three convictions, but his
assignments of error impact only the aggravated involuntary manslaughter conviction.

The road was dry, paved asphalt that was "in very good condition" and was marked with a double yellow line down the center. At that time, witnesses traveling eastbound behind Shaw's Explorer saw the headlights of appellant's westbound vehicle swerve into the eastbound lane. Both front tires of appellant's vehicle "were across the yellow line." The driver's side front fender and wheel of appellant's vehicle contacted some portion of the driver's side of Shaw's vehicle. Appellant's vehicle then "bounce[d]" "sharply back into . . . the westbound lane of traffic and kept going," narrowly missing at least one of the cars behind Shaw's Explorer. Shaw's vehicle hit a tree, and Shaw was killed.

Although the road was straight in the area where the accident occurred, appellant's vehicle was "right . . . at the crest of" a "gradual" "little" "hill" when it started "coming over and into [the eastbound] lane of traffic." However, the evidence established that, even if a vehicle was on the crest of the hill, its driver could clearly see ahead "[p]robably one hundred yards" "regardless of the incline or decline."

State Troopers John Facchina and William Harden were dispatched to the accident scene. Shortly after 7:30 p.m., they found appellant's abandoned Mitsubishi by the side of the road a little over a mile from the scene of the collision and noticed "what appeared to [be] fresh damage on the front fender and driver's front wheel." They then proceeded to the actual scene of the accident to interview witnesses and conduct an investigation at that location. Trooper Facchina examined the road where the accident occurred and found no "brake marks in either direction which could have possibly come from either vehicle." Between about 8:45 and 9:00 p.m., Trooper Facchina again examined the Mitsubishi and found an open can of beer sitting in the console between the two front seats. The can was half-full and cold.

Troopers Facchina and Harden then proceeded to appellant's residence, where they found him "obviously flustered and visibly upset," with his "clothes . . . in disarray." Appellant told

the officers that the accident occurred when a vehicle crossed the center line and struck his car, saying he thought "the other driver caused the accident." Appellant was "very talkative," his speech was slurred, and he had the odor of alcohol on his breath.

Appellant told the troopers he had left work at about 4:30 p.m. and went to Bungalow Billiards to shoot pool. Appellant, who was born in 1982 and was 19 years old at the time, admitted he had a Department of Motor Vehicles identification card bearing a name other than his own and a birth date of 1980, which he used to buy alcohol. Appellant said he consumed "five or six beers and a shot of Hennessy" while at the pool hall and then departed for home. He denied having anything to drink "since he left the bar." Appellant said that, when he left the bar, "he felt okay to drive, but he felt buzzed."

Appellant left the scene of the accident without stopping, and said he was concerned because he had been drinking and he did not want to be arrested for driving while intoxicated. He was trying to get home but "[t]he vehicle wouldn't go any further after about possibly two miles from the scene," at which time he pulled to the shoulder, "slipped into the woods on the east side" of the road, and "used his cell phone to call his family to come pick him up."

When the troopers took appellant into custody and "walk[ed] him down from the porch," Trooper Harden noticed "he was somewhat unsteady on his feet." A breathalyzer administered at 10:22 p.m., a little over three hours after the collision, showed an alcohol content of 0.07 grams per 210 liters of breath.

Appellant was tried for aggravated involuntary manslaughter, felony hit-and-run, and driving under the influence while underage, and the jury convicted appellant of the charged offenses. As recommended by the jury, appellant was sentenced to serve seven years for the aggravated involuntary manslaughter conviction and four years for the hit-and-run conviction, to

run consecutively, and he was given a fine of $500 for the offense of underage driving under the influence. Appellant then noted this appeal.

II.

ANALYSIS

In reviewing the sufficiency of the evidence on appeal, we examine the record in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it. Id.

Code § 18.2-36.1 provides in relevant part as follows:

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

See 2000 Va. Acts, chs. 956, 982; 2004 Va. Acts, ch. 461 (making minor, non-substantive changes).

We have held repeatedly that the conduct required to be proved to support a conviction for the statutory offense of aggravated involuntary manslaughter under Code § 18.2-36.1(B)--"conduct . . . so gross, wanton and culpable as to show a reckless disregard for human life"--is "'criminal negligence,'" *the same conduct* required to be proved "in the context of common law . . . involuntary manslaughter." Cottee v. Commonwealth, 31 Va. App. 398, 400, 524 S.E.2d 132, 133 (2000) (quoting Keech v. Commonwealth, 9 Va. App. 272, 277, 386 S.E.2d 813, 816

- 4 -

(1989)); see Goodman v. Commonwealth, 37 Va. App. 374, 387, 558 S.E.2d 555, 562 (2002)

("A conviction for aggravated involuntary manslaughter in violation of Code § 18.2-36.1(B)

requires proof . . . that the driver's 'conduct . . . was so gross, wanton and culpable as to show a

reckless disregard for human life,' i.e., that the driver was criminally negligent."), cited with

approval in West v. Commonwealth, 43 Va. App. 327, 343, 597 S.E.2d 274, 281 (2004).  The

difference between the common law and statutory offenses is that a conviction for aggravated

involuntary manslaughter under Code § 18.2-36.1(B), which requires proof of both driving under

the influence and a causal connection between the driver's intoxication and the death of another

person, provides for a greater penalty than may be imposed for a drinking-and-driving death

prosecuted as common law involuntary manslaughter.  See Code § 18.2-36.1(B) (proscribing

punishment as "not less than one nor more than 20 years, one year of which shall be a mandatory

minimum term of imprisonment"); Code § 18.2-36 (providing that involuntary manslaughter is

punishable as a Class 5 felony); Code § 18.2-10(e) (providing that Class 5 felony is punishable

by "a term of imprisonment of not less than one year nor more than 10 years, or in the discretion

of the jury or the court trying the case without a jury, confinement in jail for not more than 12

months and a fine of not more than $2,500, either or both").  Thus, in determining whether the

evidence was sufficient to convict appellant under Code § 18.2-36.1(B), we may consider both

(1) cases defining the parameters of the term, "criminal negligence," and (2) cases involving the

sufficiency of the evidence to prove the criminal negligence required for a common law

involuntary manslaughter conviction.

In sum, a conviction under Code § 18.2-36.1(A) "requires proof that the accused was

driving under the influence and that a causal connection exists between the driver's intoxication

and the death of another person."  Goodman, 37 Va. App. at 386-87, 558 S.E.2d at 563 (citations

omitted).  The offense defined in Code § 18.2-36.1(A) does not require proof of criminal

negligence but nevertheless permits the offender to be punished as if for common law involuntary manslaughter. If, in addition, the Commonwealth charges and proves that such drinking and driving behavior was accompanied by criminal negligence, the offender is subject to the heightened penalties of Code § 18.2-36.1(B), which, as set out above, are greater than for common law involuntary manslaughter.

A finding of criminal negligence requires "'acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury . . . and the offender knows[,] or is charged with the knowledge of, the probable results of his acts.'" Keech, 9 Va. App. at 277, 279, 386 S.E.2d at 816, 817, quoted with approval in Cottee, 31 Va. App. at 400, 524 S.E.2d at 132. The mere happening of an accident, coupled with evidence that the offender had been drinking and that the accident was his fault, does not prove *criminal* negligence as a matter of law. See, e.g., Stevens v. Commonwealth, 46 Va. App. 234, 251-52, 616 S.E.2d 754, 762-63 (2005) (en banc). Nevertheless, "[i]ntoxication is . . . relevant to a determination of the degree of the defendant's negligence: whether ordinary, gross, or wanton." Essex v. Commonwealth, 228 Va. 273, 283, 322 S.E.2d 216, 221-22 (1984).

> Drunken driving . . . tends to make the defendant's dangerous conduct more dangerous. A sober but reckless driver may rely on his skill and prompt reflexes to extricate himself from any emergency created by his reckless driving. A drunken driver has dulled his perceptions, blunted his skill, and slowed his reflexes in advance. The same reckless driving is more dangerous at his hands than it would be if he were sober, and his conduct is therefore more culpable. Intoxication, therefore, is relevant as an aggravating factor, increasing with its degree, bearing upon the relative culpability of the defendant's conduct . . . .

Id. at 283, 322 S.E.2d at 221.

Appellant concedes the sufficiency of the evidence to prove intoxication and causation but contends the evidence failed to prove the additional element of criminal negligence required

to support his conviction under Code § 18.2-36.1(B). We hold the evidence supported a finding that appellant's actions showed "a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury," and that appellant knew or should have known the probable results of his acts. Contrary to appellant's argument, the evidence need not go so far as to establish the offender had a prior "near-miss" before the requisite knowledge may be imputed.

In Zirkle v. Commonwealth, 189 Va. 862, 867-69, 55 S.E.2d 24, 27-28 (1949), for example, the Court considered the impact of the accused's level of intoxication and driving behavior in causing the death of his passenger. The Court noted that "[t]he testimony as to whether [Zirkle] was under the influence of intoxicants was material, but not controlling," and concluded, based largely on the single act of driving behavior that caused the accident, that the evidence supported a finding of criminal negligence. Id. at 868-69, 55 S.E.2d at 28. In Zirkle, the accused, who "had been drinking and was more or less under the influence of intoxicants," was driving on a straight but hilly portion of a two-lane divided highway at dusk when he collided with a car traveling in the opposite direction. Id. Immediately prior to the fatal impact,

> The parking lights or dimmers were burning on both cars[, and t]here was no obstruction to the view of the drivers as they approached each other traveling 35 to 40 miles per hour.
>
> \* \* \* \* \* \* \*
>
> . . . [A]s the accused came over the crest of a hill, [the vehicle coming from the opposite direction was about 1,000 feet away]. [The accused] was driving on the [the proper] side of the highway [at that time], but after he passed the crest [of the hill,] his car zigzagged, or swayed, across the center of the road. When the cars were approximately 75 feet apart, the accused was driving on [the] wrong side of the road, with his automobile entirely in the south-bound traffic lane.

Id. at 866-67, 55 S.E.2d at 27. The trial court found this evidence proved criminal negligence.

Id. The Supreme Court affirmed, reasoning as follows:

The testimony of the Commonwealth was to the effect that the accused operated his vehicle in such a manner that it zigzagged across the center of the highway; that as it neared the scene of the accident it was being driven entirely on the wrong side of the road in the south-bound traffic lane in plain view of the automobile approaching from the opposite direction, and that the accused failed to turn into the north-bound traffic lane until too late to avoid a head-on collision. This evidence, if believed, . . . was sufficient to convict [the accused] of negligence so gross and culpable as to indicate a careless disregard of human life and of the probable consequences of his act.

Id. at 869, 55 S.E.2d at 28; see also Lewis v. Commonwealth, 211 Va. 684, 687-88, 179 S.E.2d 506, 509 (1971) (holding evidence *insufficient* to prove criminal negligence where driver struck pedestrian not in cross walk and "record was silent as to the nature and extent of the view" the driver had of the pedestrian prior to impact).

We conclude the holding in Zirkle compels an affirmance in appellant's case. Although appellant makes much of the fact that the impact here was a "sideswiping" rather than "head-on" impact, the evidence, viewed in the light most favorable to the Commonwealth, established that both front tires of appellant's vehicle were in the victim's lane of travel at the time of contact. This evidence supports the reasonable inference that a head-on impact was avoided only because the victim, rather than appellant, managed to swerve partially out of the way before the impact occurred. Although the road traversed "a series of small hills," the evidence established that immediately prior to the impact, appellant's car was positioned so that its driver could see clearly ahead "[p]robably one hundred yards" "regardless of the incline or decline." Despite this view, the record contained no evidence that appellant anticipated the collision or engaged in any evasive maneuvers such as braking or swerving in an effort to avoid impact. The investigating officers found no brake marks at the scene, and appellant said the accident occurred when Shaw's vehicle crossed the center line into his lane, which testimony from the drivers behind Shaw's vehicle clearly refuted. Thus, the evidence supported a finding not only that appellant

- 8 -

failed to maintain proper control of his vehicle but also that he was unaware of this failure immediately prior to and even after the impact, believing the accident had occurred in his westbound lane rather than Shaw's eastbound lane. This evidence supports a finding that, at the very least, appellant, like Zirkle, should have known his behavior was reasonably calculated to produce injury.

Additional facts render appellant's behavior even more culpable than Zirkle's. Although both had been drinking prior to their respective accidents, appellant, unlike Zirkle, was beneath the legal drinking age at the time of the offense. Appellant admitted using false identification to obtain alcohol and to fleeing the scene after the accident because he feared arrest for driving while intoxicated. The jury was entitled to infer from these facts that appellant knew the law presumed him insufficiently mature to consume *any* quantity of alcohol and to manage its potentially intoxicating effects, regardless of whether he chose to drive after consuming it. Despite this knowledge, appellant chose to consume six to seven alcoholic beverages in a period of less than three hours. No evidence established that appellant had anything to eat during this time, and he admitted he was "buzzed" after consuming that quantity of alcohol. Testimony from the officers who arrested him and had his blood alcohol content tested indicated that appellant had alcohol on his breath and exhibited slurred speech and an unsteady gait. Because the evidence supported a finding that appellant had nothing to drink between the time of the accident and the alcohol testing, the jury was entitled to conclude appellant was similarly impaired at the time of the accident.[2]

---

[2] When a certificate of blood alcohol concentration (BAC) is admitted into evidence, it is presumed that the blood alcohol concentration as stated in the certificate is the same blood alcohol concentration that existed at the time of the offense. See Basfield v. Commonwealth, 11 Va. App. 122, 125, 398 S.E.2d 80, 81-82 (1990) (citing Code § 18.2-269 as providing "a presumption that the blood alcohol level determined in the test is indicative of the blood alcohol level at the time of the alleged offense"). From this presumption, the fact finder may infer that

Appellant--despite knowing he (a) was beneath the legal drinking age, (b) had consumed six or seven alcoholic beverages in under three hours, and (c) was "buzzed"--chose to get behind the wheel of his automobile. While driving home after dark on a clear, dry night on a straight, well-paved and clearly marked two-lane road, appellant failed to maintain proper control of his vehicle and drove so that it was entirely in the lane of oncoming traffic. Despite visibility of at least 100 yards, he also failed to see a car approaching from the opposite direction, in its proper lane of travel, until it was too late for him to avoid the impact or take any evasive action. This evidence was sufficient to support a finding that appellant's behavior causing the fatal accident constituted criminal negligence.

### III.

For these reasons, we hold the evidence was sufficient to support a finding that appellant was criminally negligent, and we affirm his conviction for aggravated involuntary manslaughter pursuant to Code § 18.2-36.1(B).

<u>Affirmed.</u>

---

any signs of impairment displayed at or near the time of the test also existed at the time of the offense.

Here, the certificate of analysis showed appellant's blood alcohol content was 0.07, which the law says provides no presumption that appellant was or was not under the influence of alcohol at the time of the alleged offense. See Code § 18.2-269. However, both officers testified that when they questioned and then arrested appellant, shortly before the BAC test was administered, they smelled alcohol on appellant's breath. One of the officers testified, in addition, that appellant was slurring his words and "was somewhat unsteady on his feet."

The law provides, and the jury was instructed, that "[a] person is under the influence of alcohol if he has drunk enough alcoholic beverages so as to affect his manner, disposition, speech, muscular movement, general appearance, or behavior as to be apparent to observation." Clemmer v. Commonwealth, 208 Va. 661, 664, 159 S.E.2d 664, 666 (1968); see also Code § 4.1-100 (defining "intoxicated" for purposes of Alcoholic Beverage Control Act, Code §§ 4.1-100 to 4.1-517). Appellant's description of himself as "buzzed" when he left the pool hall, coupled with the results of the BAC test and the troopers' observations that he smelled of alcohol and exhibited a slurring of his speech and an unsteady gait, supported a finding that he was intoxicated.