COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia


ANDREW NICHOLAS CHAVIS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1029-16-2                      JUDGE MARY GRACE O'BRIEN
                                                    JULY 18, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
Timothy K. Sanner, Judge

Jennifer M. Newman (Jennifer M. Newman, Esq., P.C., on brief), for
appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


After a bench trial, Andrew Nicholas Chavis ("appellant") was convicted of involuntary

manslaughter in violation of Code § 18.2-36.1(A). He asserts the following assignments of error:

1.  The trial court abused its discretion in allowing expert
    testimony on the interpretation of data from the event
    data recorder of the 2011 Hyundai Sonata.

2.  The trial court erred in convicting Chavis of involuntary
    manslaughter because the Commonwealth failed to prove,
    beyond a reasonable doubt, that Chavis caused the accident
    that [led] to the deaths of Wanda and Sheila McGowan.

Finding no error, we affirm the convictions.

FACTS

We consider the evidence in the light most favorable to the Commonwealth, the prevailing

party at trial. Whitehurst v. Commonwealth, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014). At

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

approximately 8:00 p.m. on March 1, 2015, Sheila McCowan was driving her Nissan Sentra on Interstate 64. Her sixteen-year-old son, Justin, was in the passenger seat, and her sister, Wanda, was in the back seat. Justin testified that, although he was "paying attention mostly to [his] phone," he knew that his mother was traveling approximately sixty-five miles an hour in a seventy mile-an-hour zone. McCowan activated her turn signal, moved into the left lane, and passed a few vehicles. She signaled again and returned to the right lane. At that time, the car was struck from behind with such force that it "flew up[,] hit the ground [and] started spinning" into the woods. Justin testified that the force of the collision "felt like a roller coaster just shooting out." The collision caused extensive damage to the vehicle's rear-end and driver-side door. The force of the impact also caused McCowan's car to collide with a Honda Fit traveling in front of it. McCowan and her sister died at the scene as a result of injuries they sustained in the accident.

Virginia State Trooper Brandon Patenaude arrived at the accident scene. He discovered the Nissan in the woods, next to a tree. He also observed a Hyundai Sonata "sitting on the guardrail, halfway in the right lane," with extensive front-end damage. Trooper Patenaude identified appellant as the driver of the Hyundai.

Appellant was transported to the hospital for treatment of a head wound. At the hospital, Trooper Patenaude noticed that appellant's eyes were "glossy," and he smelled of alcohol. Appellant initially told the trooper that he did not drink anything that evening, but he later admitted that he had consumed two twenty-seven-ounce margaritas before the accident. A sample of appellant's blood was drawn at both 9:30 p.m. and 12:20 a.m. the next morning. The 9:30 p.m. sample reflected a blood alcohol content between .13 and .14% by weight per volume. The 12:20 a.m. sample established that appellant's blood alcohol content was .132%.

Dr. Jon Dalgleish, a forensic toxicology expert, testified that he performed a retrograde extrapolation and determined that at 8:00 p.m. appellant's blood alcohol content was between .145

and .172%. Dr Dalgleish testified concerning the effects of this level of alcohol on a person's ability to operate a motor vehicle safely. He opined that it would "slow down one's judgment, attention and control [causing someone to do] things one may not normally do . . . [and would affect a driver's] ability to pay attention, process information [and] coordinate muscle movements."

A. The Event Data Recorder

Appellant's Hyundai contained an event data recorder ("EDR"), a small device located within the airbag control module. The EDR retains information about the vehicle's actions in the seconds immediately preceding and during an accident. After the accident, a Virginia State Police sergeant removed the EDR from appellant's vehicle. With the assistance of Richard Ruth, an accident reconstruction consultant, the sergeant used an instrument to download data from the device. At trial, the court recognized Ruth as an "expert in the field of accident reconstruction with a specialty in data recovery" from EDRs.[1]

Ruth explained that the EDR removed from appellant's vehicle indicated that the vehicle's velocity decreased by approximately thirty-three miles per hour when it hit the McCowan vehicle. He testified that the EDR showed that the Hyundai was traveling between 121.2 and 122.4 miles per hour immediately prior to the collision; however, Ruth conceded that tire size can affect the accuracy of the EDR estimate of speed, and the size of the vehicle's tires was unknown. Although the court allowed Ruth to testify concerning the EDR data, it sustained appellant's objection to any testimony from Ruth that would conclusively establish appellant's speed at the time of the accident based on the data.

---

[1] Appellant stipulated to Ruth's qualification as an expert in EDRs but contested his expertise in accident reconstruction.

B. The Verdict

At the conclusion of the evidence, the court found appellant guilty of violating Code

§ 18.2-36.1(A). The court held that the

> collision took place because the defendant, under the influence of
> alcohol, had his judgment impaired to drive his motor vehicle, at a
> rate of high speed, that he failed to appreciate how fast he was
> overtaking the McCowan vehicle, that as she was changing lanes as
> described by Justin, he failed to slow his vehicle or otherwise
> properly control it so that instead it resulted in ramming it from
> behind, sending it off the road into a tree and tragically killing [the
> McCowan sisters].

The court relied on the testimony of Dr. Dalgleish concerning the effects of alcohol on the body,

Justin McCowan's testimony about the events immediately preceding the collision, and photographs

of the damage to the two vehicles. The court also noted that although there were "limits of what

[Richard Ruth's] testimony" could establish, some of his conclusions were sufficient to "support

other evidence" regarding appellant's speed. Accordingly, the court determined that the evidence

was sufficient to establish that appellant was driving while intoxicated and that his driving behavior

caused the accident and the victims' deaths.

ANALYSIS

Appellant contends that the court impermissibly considered the expert testimony of Richard

Ruth and that the Commonwealth failed to prove that appellant caused the accident. We disagree.

A. Expert Testimony

"Generally . . . we will not reject the decision of the trial court [to admit evidence] unless we

find an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578

(2010). Appellant does not contest Ruth's qualification as an expert, but argues that the court erred

by permitting Ruth to interpret the EDR data. "The sole purpose of permitting expert testimony is

to assist the trier of fact to understand the evidence presented or to determine a fact in issue."

Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). An expert witness

may not testify as to accident reconstruction. See Grasty v. Tanner, 206 Va. 723, 727, 146 S.E.2d 252, 254-55 (1966) (holding accident reconstruction testimony inadmissible because "[r]easonable men [are] capable of drawing their own conclusions as to the speed of [a vehicle], based on its condition after the impact, and the expert's testimony [could] invade . . . the province of the jury on a vital issue"). Ruth was only permitted to testify about the data extracted from the EDR in appellant's vehicle. Therefore, Ruth did not invade the province of the court as fact finder because Ruth was not permitted to draw a conclusion as to appellant's speed immediately preceding the accident.

Additionally, appellant's charges of involuntary manslaughter were based on driving under the influence of alcohol; therefore, intoxication is the gravamen of the offense, not speed. See Rule 2:704(b) (prohibiting an expert witness from testifying "on the ultimate issues of fact" in a criminal case). Although appellant's speed may have been an indication of his impairment, the court admitted evidence of speed only for that limited purpose. Accordingly, the court did not abuse its discretion in considering Ruth's testimony.

## B. Sufficiency of the Evidence

Appellant also contends that the evidence was insufficient to establish that his intoxication caused the accident that resulted in the two fatalities. "When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). Upon review, "[a]n appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 433 U.S. 307, 318-19 (1979)). "Rather, the relevant question is

whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.

Code § 18.2-36.1(A) provides that "[a]ny person who, as a result of driving under the influence . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." Therefore, "a conviction under Code § 18.2-36.1(A) 'requires [specific] proof that the accused was driving under the influence and that a causal connection exists between the driver's intoxication and the death of another person.'" Wyatt v. Commonwealth, 47 Va. App. 411, 417, 624 S.E.2d 118, 121 (2006) (quoting Goodman v. Commonwealth, 37 Va. App. 374, 386-87, 558 S.E.2d 555, 563 (2002)).

Although appellant concedes that he was intoxicated at the time of the accident, he asserts that the evidence was insufficient to demonstrate a causal connection between his intoxication and the accident. He argues that the evidence that he caused the accident was wholly circumstantial, and therefore insufficient to establish his guilt.

When a conviction is based on circumstantial evidence, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence." Commonwealth v. Smith, 259 Va. 780, 783, 529 S.E.2d 78, 79 (2000). However, "[c]ircumstantial evidence is not viewed in isolation." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 32 (2005).

The court relied on Justin McCowan's testimony that his mother's car was hit with such force that he felt as though he was jolted forward on a roller coaster. According to Justin, the impact occurred after his mother had returned to her lane of travel. The physical evidence corroborated his account; the photographs depicted extensive damage squarely on the rear-end of

the McCowan vehicle, with corresponding damage to the front-end of appellant's vehicle. The force of the impact also caused the McCowan vehicle to hit the Honda traveling in front of it. Further, retrograde analysis established that at the time of the collision, appellant's blood alcohol content was .172%, more than twice the legal limit.

Dr. Dalgleish's unrebutted testimony concerning the effects of appellant's blood alcohol level was unequivocal: a blood alcohol content of .172 would "affect [a person's] ability to operate . . . a motor vehicle safely." Operating a motor vehicle with that level of alcohol would "slow down one's judgment, attention and control [causing someone to do] things one may not normally do." Further, a driver's "ability to pay attention, process information [and] coordinate muscle movements" would be compromised. The court reasonably could infer that because of his intoxication, appellant was unable to appreciate the lower speed of the McCowan vehicle and could not slow down before causing the collision.

For these reasons, we find that the evidence was sufficient to prove that appellant's intoxication caused him to operate his vehicle in a manner that resulted in the deaths of Sheila and Wanda McCowan. Accordingly, we affirm his convictions for involuntary manslaughter.

<u>Affirmed.</u>