UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Newport News, Virginia

JUSTIN DEAN HEDGPETH

v.       Record No. 0107-17-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
DECEMBER 27, 2017

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Randolph T. West, Judge Designate

Michael A. Hyman (Collins & Hyman PLC, on brief), for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


On September 7, 2016, in the Circuit Court for the City of Williamsburg and the County

of James City (the "circuit court"), Justin Dean Hedgpeth ("Hedgpeth") was convicted of two

counts of misdemeanor eluding police, in violation of Code § 46.2-817, driving while intoxicated

(third or subsequent in ten years), in violation of Code § 18.2-266, and two counts of driving on

a revoked license, in violation of Code § 46.2-391(D)(2).  Hedgpeth was also convicted of petit

larceny, second offense, in violation of Code § 18.2-96.[1]  On appeal, Hedgpeth alleges two

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On March 17, 2016, Hedgpeth became the subject of an investigation for petit larceny that occurred at a Martin's store.  At the trial on September 7, 2016, Hedgpeth stipulated that he took beer from Martin's without paying and without permission and that he was thereafter sought by police while operating a motor vehicle on March 17, 2016.  After being stopped by a police officer, Hedgpeth fled the scene.  Here, however, Hedgpeth challenges only his conviction for driving while intoxicated and one of his convictions for driving on a revoked license, which stem from a separate incident on March 12, 2016.  The March 12, 2016 incident is the subject matter of this appeal.

assignments of error: (1) that the facts are insufficient to convict him of driving while intoxicated, third or subsequent within ten years, and (2) that the facts are insufficient to convict him of driving on a revoked license.

"When reviewing a defendant's challenge to the sufficiency of the evidence to sustain a conviction, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014). An appellate court may reverse the judgment of the trial court "if the judgment 'is plainly wrong or without evidence to support it.'" Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123 (2011) (quoting Code § 8.01-680). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. (quoting Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)). The issue on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009) (quoting Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008)).

Accordingly, the evidence is that on March 12, 2016, Williamsburg Police Officer D. Mizelle ("Officer Mizelle") witnessed Hedgpeth make an illegal right turn. Two clearly visible traffic signs prohibiting right turns were posted at the intersection. Officer Mizelle initiated a traffic stop on Hedgpeth's vehicle after Hedgpeth maneuvered his vehicle through a narrow alleyway and parked in a parking lot. When Hedgpeth gave Officer Mizelle his driver's license, Officer Mizelle "could smell a strong odor of an alcoholic beverage coming from the vehicle."

Officer Mizelle asked Hedgpeth to step out of his vehicle to complete a field sobriety test. Hedgpeth exited his vehicle but refused to take a field sobriety test. Instead, Hedgpeth attempted to light a cigarette. When Officer Mizelle asked Hedgpeth not to do so, Hedgpeth replied "[i]f you're going to take me to jail for whatever, go ahead and take me to jail." Officer Mizelle asked Hedgpeth to perform a field sobriety test a second time, but Hedgpeth again refused. Officer Mizelle noticed a strong odor of alcohol emanating from Hedgpeth's person and that Hedgpeth's speech was slurred. Hedgpeth attempted to light another cigarette but then ran from the scene. Hedgpeth's flight from Officer Mizelle took him through the parking lot, down an embankment, and into a wooded area.

Remaining with a passenger in Hedgpeth's vehicle, Officer Mizelle observed an open bottle of whiskey and an open two-liter bottle of soda in the backseat. Hedgpeth's vehicle contained two cups in the center console that "were filled with a brown liquid that . . . smelled of an alcoholic beverage." Officer Mizelle also noticed that the key to Hedgpeth's vehicle was removed from the ignition and dropped behind the front passenger seat.

Hedgpeth was subsequently apprehended. On September 7, 2016, Hedgpeth pleaded not guilty to all charges against him—two counts of misdemeanor eluding, driving while intoxicated, two counts of driving on a revoked license, and one count of petit larceny. Hedgpeth stipulated that he fled from Officer Mizelle. Hedgpeth also stipulated that his license was revoked at the time. Finally, Hedgpeth conceded that he had two prior convictions for driving while intoxicated in the ten years prior to his arrest and that he was the driver of the vehicle during the incident upon which this appeal is based.

Following a bench trial where only Officer Mizelle testified, the circuit court convicted Hedgpeth of all charges. Explaining its decision, the circuit court noted that the case was a "close call as far as the DUI is concerned." The circuit court then convicted Hedgpeth and

specifically noted the fact that Hedgpeth refused to take a field sobriety test and subsequently fled the scene. Additionally, the circuit court observed that there was a "strong odor of alcohol coming from [Hedgpeth's] car" as well as an "odor of alcohol" on Hedgpeth's breath. This appeal follows.

Code § 18.2-266 prohibits a person from operating a motor vehicle "while such person is under the influence of alcohol . . . ." In the absence of forensic testing demonstrating blood alcohol content in excess of the proscribed limit, the degree of intoxication, or being under the influence of alcohol, "is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" Thurston v. Lynchburg, 15 Va. App. 475, 483, 424 S.E.2d 701, 705 (1992) (quoting Gardner v. Commonwealth, 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954)). In determining whether a defendant was intoxicated, a factfinder considers "all of the evidence of his condition at the time of the alleged offense." Leake v. Commonwealth, 27 Va. App. 101, 109, 497 S.E.2d 522, 526 (1998) (quoting Brooks v. City of Newport News, 224 Va. 311, 315, 295 S.E.2d 801, 804 (1982)).

Hedgpeth supports his first assignment of error by offering alternative explanations for each piece of circumstantial evidence that the circuit court relied upon to convict Hedgpeth of driving while intoxicated. Attempting to explain the odor of alcohol emanating from his vehicle and person, Hedgpeth argues that, since he fled the scene shortly after Office Mizelle approached him, Officer Mizelle only had a limited interaction with him and, consequently, Officer Mizelle could not conclusively establish that he was intoxicated. Hedgpeth also insinuates that the passenger in his vehicle was responsible for the odor of alcohol and the open containers. Attempting to explain his attempts to light a cigarette against the wishes of Officer Mizelle, Hedgpeth posits that "his decision to light a cigarette against the direction of Officer Mizelle is

immaterial to the issue of intoxication." Finally, Hedgpeth argues that, "[d]espite the Commonwealth's efforts, the evidence demonstrates reasonable doubt as to whether [Hedgpeth] was intoxicated." In support of this last argument, Hedgpeth asserts that since he maneuvered his vehicle through a difficult turn, down a narrow alleyway, successfully parked in a tight parking space, and had no difficulty in running "down a pathway through a wooded area and down an embankment" in his successful attempt to elude Officer Mizelle, he could not have been impaired to the point of intoxication. According to Hedgpeth, these facts demonstrate "that his ability to drive at the time [was] exceptional."

Hedgpeth also argues that, other than slurred speech, Officer Mizelle's testimony did not present any other indicia of intoxication typically found in a driving while intoxicated case. Hedgpeth notes that the evidence did not show that he had a flushed face, bloodshot eyes, or otherwise intoxicated disposition. Further, Hedgpeth attempts to justify his flight from Officer Mizelle by relying on Jones v. Commonwealth, 279 Va. 52, 688 S.E.2d 269 (2010). Hedgpeth argues that, under Jones, "[a] refusal to submit to field sobriety tests . . . can often be explained in terms of innocent human behavior." Id. at 58, 688 S.E.2d at 272.

Hedgpeth's reliance on Jones, however, is misplaced. Hedgpeth is correct that the refusal to submit to a field sobriety test alone is insufficient to infer consciousness of guilt. Hedgpeth, however, chooses to ignore the very next sentence in Jones, which states "*[u]nlike instances of flight . . . or other acts of deception, a driver refusing to submit to a field sobriety test has not undertaken affirmative action to deceive or to evade the police.*" Id. (emphasis added). While our Supreme Court set forth several examples of innocent human behavior justifying a field sobriety test refusal—including tiredness, a lack of physical dexterity, a limited ability to speak the English language, or a reluctance to submit to subjective assessments by a police officer— those justifications do not apply here. Further, Jones stands for the proposition that the refusal to

perform a field sobriety test, *without more*, is insufficient to demonstrate a defendant's consciousness of guilt. See id. at 60, 688 S.E.2d at 273. In this case there was more than his mere refusal to perform a field sobriety test. Moreover, it is clear that "the refusal to submit to field sobriety tests is evidence of a defendant's consciousness of guilt." See id. Because the record does not support any reasonable inference of any innocent explanation for Hedgpeth's actions, Jones lends no support to Hedgpeth's argument.

Here, the circuit court properly weighed all of the evidence, including Hedgpeth's novel speculations suggesting alternate conclusions from those facts, before finding Hedgpeth guilty of driving while intoxicated. In doing so, the circuit court explicitly relied on the totality of the evidence that, taken together, present compelling circumstantial evidence that Hedgpeth was driving while intoxicated. "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2002) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)) (internal quotation marks omitted). Specifically, the evidence supporting the circuit court's conclusion that Hedgpeth was intoxicated in the light most favorable to the Commonwealth as the prevailing party below is that while Hedgpeth was driving, Hedgpeth and his companion were both drinking alcoholic beverages. Hedgpeth either failed to notice or deliberately disregarded two posted and clearly visible traffic signs at an intersection where he made an illegal right turn. A strong odor of alcohol emanated from Hedgpeth's person, and Hedgpeth's speech was slurred. Hedgpeth was uncooperative with Officer Mizelle's attempts to conduct a field sobriety test and fled from Officer Mizelle immediately after Mizelle's second request that Hedgpeth do so. Based on this evidence, we cannot say that no rational factfinder could reach the same conclusion as the circuit court did in this matter.

Hedgpeth, in his second assignment of error, argues that the evidence was insufficient to support his conviction for driving on a revoked license, in violation of Code § 46.2-391(D)(2).

Code § 46.2-391(D)(2) provides, in relevant part, that any person who is convicted of violating Code § 18.2-266, after previously having had his or her driver's license revoked, is guilty of a felony. See Code § 46.2-391(D)(2). Hedgpeth does not challenge the statute's validity. Rather, Hedgpeth indicates that Code § 46.2-391(D)(1) states "[i]f such driving does not of itself endanger the life, limb, or property of another, such person shall be guilty of a Class 1 misdemeanor." Code § 46.2-391(D)(1). And, because Hedgpeth argues that the evidence was insufficient for the circuit court to find that he was driving while intoxicated he claims that the circuit court erred in failing to reduce the driving revoked charge to a misdemeanor. Stated another way, Hedgpeth argues that his driving while revoked charge "should have been reduced to a misdemeanor, as there is insufficient evidence to prove the enhancements necessary for a felony charge."

Despite Hedgpeth's assertions that his conduct did not endanger life, limb, or property of another, the law recognizes that "the act of driving while intoxicated . . . is inherently dangerous." Davis v. Commonwealth, 12 Va. App. 408, 413, 404 S.E.2d 377, 380 (1991). "A drunken driver has dulled his perceptions, blunted his skill, and slowed his reflexes in advance." Wyatt v. Commonwealth, 47 Va. App. 411, 418, 624 S.E.2d 118, 122 (2006) (quoting Essex v. Commonwealth, 228 Va. 273, 283, 322 S.E.2d 216, 221 (1984)). Further, the predominant purpose of any drunk driving statute is to protect innocent people from the devastating harm so easily caused by an intoxicated driver.[2] See, e.g, Gallagher v. Commonwealth, 205 Va. 666, 139 S.E.2d 37 (1964).

---

[2] Hedgpeth also posed a danger to other drivers because his driver's license was revoked. As previously noted by this Court, "the purpose of revoking a driver's license is not to punish the

- 7 -

At trial, Hedgpeth stipulated to the authenticity of his Department of Motor Vehicles ("DMV") transcript showing that his driver's license was revoked as a result of a second offense for driving while intoxicated. Hedgpeth did not object to the admission of his DMV transcript or prior conviction orders. Further, Hedgpeth stipulated that he was driving when Officer Mizelle initiated the traffic stop on March 12, 2016. Therefore, the only factual issue left for the circuit court's determination was whether Hedgpeth drove while intoxicated, in violation of Code § 18.2-266.

For the reasons stated above, the circuit court did not err in finding that Hedgpeth was guilty of driving while intoxicated, in violation of Code § 18.2-266. It follows that the elements of Code § 46.2-391(D)(2) were satisfied, and the circuit court did not err in concluding that the evidence was sufficient to prove that Hedgpeth was guilty of felony driving on a revoked license.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

offender but to remove from the highways an operator who is a potential danger to other users." Ingram v. Commonwealth, 29 Va. App. 759, 763, 514 S.E.2d 792, 794 (1999).